## Palmer *against* Gallup.

An officer is not liable to the creditor, for not attaching real estate of the debtor, which the creditor never directed him to attach.

In an action against an officer for neglect of duty in the service of mesne process, the rule of damages, is the injury actually sustained by such neglect.

*Windham,*
*July, 1844.*

Palmer
*v.*
Gallup.

In such case, it is peculiarly the duty of the jury to assess the damages; in doing which they are to take into consideration the conduct of the plaintiff, who is bound to exercise reasonable diligence, as well as that of the officer.

Where there was evidence tending to show neglect of duty on the part of the officer, and want of diligence on the part of the plaintiff; and the court instructed the jury, that if the officer's negligence were proved, still the plaintiff could recover only what he had lost by such negligence; for if the plaintiff, by the use of reasonable diligence, could have secured the demand, or any part of it, and by his own negligence, he had failed to do it, he could not recover for that part which had been lost by such negligence of his, but only for so much as had been lost by the negligence of the officer; it was held, that the subject of damages, and of the negligence of the parties as affecting the damages, was properly presented to the jury.

Where it appeared, in an action against the sheriff for the default of his deputy in the service of a writ of attachment, that such deputy had collected upon the execution issued in the original suit a part of the amount thereof, and had not paid it over to the creditor; it was held, that this fact furnished no ground of recovery in the present action; and the jury having included the sum so collected in their verdict, a new trial was granted, unless the plaintiff would discharge any claim he might have for that sum.

THIS was an action against the defendant, as sheriff of *Windham* county, for the default of *John R. Tweedy*, one of his deputies, in the service of a writ in favour of the plaintiff.

The cause was tried at *Brooklyn, January* term, 1844, before *Church,* J.

On the 26th of *February*, 1840, *Hogan & Miln* brought their action, by writ of attachment, against *Joseph S. Curtis,* which the plaintiff, as an officer, served, by attaching two yokes of oxen, four horses and ten cows. This property the plaintiff delivered to said *Curtis, Charles Church* and *Otis Chapin,* who gave their joint receipt for it, promising to deliver it to the plaintiff, when demanded. Demand having been duly made upon the receipt for the property, which the receipters failed to deliver, the plaintiff, on the 25th of *November*, 1840, sued out his writ of attachment against them, and put it into the hands of said *Tweedy*, a deputy of the defendant, for service. He served it, in *December*, 1840, and *January*, 1841, by attaching some property of *Otis Chapin*, and returned it to court, without any service upon the two other defendants. In *October*, 1841, judgment was rendered in that suit against all the defendants therein, for 472 dollars, damages, and 16 dollars, 84 cents, costs of suit. An execution issued on this judgment, dated *October* 11th, 1841, was put into the hands of *Tweedy*, to be executed. From the

property attached he collected on the execution 74 dollars, 24 cents, and returned it in due form; but he has never paid any part of the sum so collected to the plaintiff.

*Hogan & Miln* recovered judgment in their suit against *Curtis,* which the plaintiff has been obliged to pay, and has paid. *Curtis* has been discharged under the late bankrupt law of the *United States;* and *Chapin* has died insolvent.

The plaintiff, to prove, that *Tweedy* might have attached property sufficient to secure the debt, offered evidence to prove, that *Church,* in *December,* 1840, owned real estate of the value of 290 dollars; that he had personal property in possession of the value of 200 or 300 dollars; that aside from this claim, he was good for his own debts; that there was no change in his property, except that he had not as many cows as he then had. There was also some evidence as to *Chapin's* property, which is not material to any point now in controversy.

There was no evidence to show when the plaintiff first discovered, or had reason to suppose, that his writ was not served in a proper manner; or that he was in danger of loss upon this receipt; or that he knew any thing of the state, condition or amount of the property of *Church* or *Chapin,* when he became acquainted with the fact of such neglect.

The judge instructed the jury, 1. that this being an action against the sheriff, for the default of his deputy in the service of a writ of attachment, the fact that such deputy had collected upon the execution a part of the amount thereof, and had not paid it over to the plaintiff, gave no right of recovery in this suit; 2. that if the negligence of the defendant's deputy was proved, yet the plaintiff could recover only the amount of what he had lost, by such negligence; for if the plaintiff, by the use of reasonable diligence, could have secured the demand, or any part of it, and by his own negligence he had failed to do it, he could not recover for that part which had been lost by such negligence of his, but only for so much as had been lost by the negligence of the officer.

The jury returned a verdict for the plaintiff, for 512 dollars, damages, and costs. The defendant did not complain of the charge, but claimed that the verdict was against evidence, and moved for a new trial on that ground.

*Windham,*
July, 1844.

Palmer
*v.*
Gallup.

*Strong* and *Welch*, in support of the motion.

*Tyler* and *Foster*, contra.

WILLIAMS, Ch. J.   The defendant claims, that manifest injustice has been done to him, by the verdict; for the plaintiff can now recover at least part of his debt of *Church*, and can recover of the defendant the 74 dollars collected on the execution; whereas he ought only to be indemnified for his actual loss.

As to the real estate, we think it may be laid out of the case, as the plaintiff never directed it to be attached.   The testimony of the plaintiff's witnesses goes to show, that *Church* had 200 or 300 dollars worth of personal property, when process issued; most of which property remained with him until the time of trial, and probably might have been attached.   The defendant therefore says, that the jury should have deducted the amount from the verdict.

The rule seems once to have been in this state, that the officer who had been guilty of neglect in not serving mesne process, as well as final process, should be liable for the whole debt.   *Clark* v. *Smith*, 9 *Conn. R.* 387.   It was a rule rather of stern policy than of exact justice.   In the case of *Duryee* v. Sheriff *Webb*, (a) before the circuit court of the *United*

---

(*a*) The reporter was present at the trial of the case referred to, and took some minutes of the proceedings.   From these minutes he is enabled to furnish the following report of the case.

DURYEE V. WEBB.

This was an action on the case, brought by *John T. Duryee*, described as "a citizen of the city, county and district of *New-York*, merchant," against *Henry Webb*, described as "of the town and county of *Windham*, in the *Connecticut* district, esquire, a citizen of the *United States*, and sheriff of said *Windham* county," to recover damages for the default of *Hubbard Dutton*, a deputy of the defendant, in permitting the escape of *Roswell Bailey*, after he had been arrested on mesne process in favour of the plaintiff.   The return of the deputy-sheriff on such process, was as follows: "I then, by virtue of this writ, attached the body of the within-named *Roswell Bailey*, read the same in his hearing, and immediately thereafter, by reason of the darkness of the night and the connivance of sundry persons, there being many then present, and by their aid and secret assistance, the said *Bailey* escaped, so that I was unable to procure bail, or have the said *Bailey* in court."

The defendant pleaded the general issue; on which the parties went to trial.
The plaintiff having made out his case *prima facie*, and rested,   T. S. *Wil-*

*States,* in this district, in 1810, Judge *Livingston* at first held, that such was the rule of the common law ; but in the course of the trial, he became satisfied, that it was not ; and so he

*iiams,* (with whom was *J. Trumbull,*) for the defendant, offered *Roswell Bailey,* as a witness, to prove, that at the time of the alleged escape, he was a bankrupt.

*Daggett,* for the plaintiff, objected to his competency ; because if the plaintiff should recover, the defendant would have remedy against *Bailey.* He was, therefore, interested to defeat a recovery.

LIVINGSTON, J. Is not *Bailey's* interest balanced ? He is now liable to *Duryee ;* if the plaintiff recovers, he will then be responsible to the sheriff. He cannot avoid responsibility one way or the other.

*Daggett.* The rule of damages in the two cases, will be different. *Duryee* can claim of *Bailey* no more than the debt ; whereas the sheriff, if he is subjected in this suit, can come upon *Bailey* for all that he has had to pay on his account—debt, costs and expenses.

LIVINGSTON, J. Is that clear ? Would the sheriff, in that case, recover accumulated damages ?

*Daggett* referred to *The Sheriffs of Norwich* v. *Bradshaw, Cro. Eliz.* 53. which was an action against the party arrested, for an escape. The debt for which the defendant was arrested, was 9*l.* 10*s.* ; and the plaintiffs alleged, that they were bound, by reason of the escape, to answer the debt, "*necnon* to expend money for the search of him, to their damage 20*l.*" After a verdict for the plaintiffs, the court held, that the action was sustainable, though they had not paid the money. This establishes the principle, that the party escaping must *indemnify* the sheriff. A judgment in favour of the sheriff against *Bailey,* would, of course, be greater than the amount of *Duryee's* present judgment against him.

*Williams* remarked, that it had been decided, that a person *rescued* may be a witness.

LIVINGSTON, J. In that case, the person rescued is supposed to be innocent. He would not be liable for accumulated damages. If *Bailey* was rescued, he might be a witness. But if he has run away himself, he must *indemnify* the sheriff, and is interested to diminish the damages against him. Here it appears from the return of the officer who made the arrest, that *Bailey* " escaped ;" and this return is conclusive against the sheriff. I think *Bailey* ought to be excluded, though it struck me differently at first.

The counsel for the defendant then proposed to call other witnesses to prove that *Bailey* was a bankrupt.

*Daggett* said he would not object to the admission of this evidence, though he should contend, that if admitted and the fact proved, it would make no difference in the damages to be recovered.

After the evidence in the cause was before the jury, *Daggett* contended, that the rule of damages must be the amount of the judgment against *Bailey* and interest. It is a prominent feature of our law, that it takes the most effective means to secure the payment of honest debts. It first protects the debtor, by furnishing him security against an unfounded claim. It then gives the creditor power to proceed, first against the debtor's property, and then, for want thereof, to take his body. In the latter alternative, the officer must commit the prisoner, if he does not procure bail. If he does, he must still find special bail, before he

told the jury ; but he added, that officers should be held to strict account, and the jury had right to give the whole amount of debt, and were he on the jury, he would do it in

can plead. If judgment goes against him, and he avoids, so that the execution is returned *non est,* the *whole debt* is recoverable of the bail. If he is committed, and escapes through the insufficiency of the gaol, the county is liable for the *whole debt.* If he escapes through the negligence of the sheriff, he is liable for the *whole debt.* And there is practically no difference, (if any in theory,) between an escape on mesne and one on final process. In every case that has occurred, the rule of damages has in fact been the *whole debt.* *Hubbard* v. *Shaler,* 2 *Day,* 195. In *Gleason* v. *Chester,* 1 *Day,* 152. the verdict was for the *whole debt.* No other rule can be adopted consistently with the principle which pervades our laws on this subject. The creditor has an absolute right to have the body. The sheriff has no discretion in the matter. He is not authorized to inquire whether his prisoner is rich or poor, young or old, strong or weak. The law prescribes to him a certain line of duty, and requires strict performance. Nor is the law unreasonable in this. The debtor may have no visible property ; but he may have secret resources, which imprisonment will call forth. A young and active man, like the debtor in this case, may have friends who will pay the debt, and trust to his future efforts for reimbursement. If the debtor is destitute of resources and friends, and is committed on the execution, he may obtain relief by the poor debtor's oath, or the insolvent law. (*a*) In *England,* if the debtor, through the negligence of the attorney, is not charged in the execution, such attorney is liable for the whole debt. *Russell* v. *Palmer,* 2 *Wils.* 325.

LIVINGSTON, J. That case has always been relied on, to show, that the attorney was not of course liable for the whole debt ; for although a verdict was, in the first instance, given for the plaintiff for the whole debt, yet a new trial was afterwards granted, the court, including Lord *Camden,* before whom the cause had been tried, being of opinion, that he had misdirected the jury in telling them they ought to find a verdict for the whole debt ; and upon the second trial, the jury were told they might find what damages they thought fit, and they accordingly found only one-sixth part of the debt. 2 *Wils.* 328.

*Trumbull,* contra, insisted, that if the plaintiff was entitled to recover at all, in this case, the rule of damages was the injury actually sustained, by the negligence of the officer ; and on the amount of *that,* they [the counsel for the defendant,] were at liberty to go to the jury. In the first place, here was a *rescous.* To constitute a rescous, it is not necessary that the prisoner should be taken out of the hands of the officer, wholly by extraneous force. It may be done, by the *aid* of others. Nay, the prisoner may rescue himself.

LIVINGSTON, J. *Rescous* is a technical term, and must be shown distinctly. The return does not state in terms a *rescous.* Its construction must be made most strongly against the officer. Do the circumstances detailed in it amount to a rescous ? Must not a rescous be effected by force ?

*Trumbull.* It is not necessary that there should be physical force. He

(*a*) The act of *May,* 1809, authorizing the superior court to grant relief in certain cases of insolvency, was then in force.

*that case.* There, the person had escaped from arrest on mesne process, by aid of friends, in a crowd, and without any gross negligence on the part of the officer; and the evidence showed that he was worth very little.

referred to *Waldo* v. *Lambert, Cro. Eliz.* 868. and *Mounson* v. *Cleyton, Cro. Car.* 255.

LIVINGSTON, J. Have you any authority to show, that the sheriff, in a case like this, is liable only for the injury actually sustained ?

*Trumbull.* I was coming to that point. The opinion of *Grose,* J., in *Bonafous* v. *Walker,* 2 *Term R.* 132. establishes the proposition, that in an action on the case for an escape, the jury are at liberty to give such damages as they shall think right, under all the circumstances of the case ; and he adds, that a shilling is frequently sufficient.

LIVINGSTON, J. Read the facts in that case. What a judge says, is to go for nothing, except as it applies to the facts. If the point is settled, as you claim it, by decisions, the court will be governed by them ; but in the absence of such decisions, the court is inclined the other way. The evils would be great, if it were understood, that an officer may let a prisoner go, whenever he thinks that nothing can be got from him. It would open a wide door to collusion. (*b*)

*Trumbull* then cited *Planck* v. *Aderson,* 5 *Term R.* 37. 40. as a decision in point. *Buller,* J. says, where the prisoner escapes out of custody on mesne process, the creditor cannot bring an action of debt, but is driven to his action on the case, which is founded on the damage sustained ; and if no damage be sustained, the creditor has no cause of action.

LIVINGSTON, J. There is a great difference between the liability of a private agent or attorney, and that of a public officer, to whom the party must of necessity resort. The sheriff ought not to be allowed to say, that this action is vindictive. If he is not liable, it is in his power not to execute mesne process at all ; and we should be placed in an ocean of uncertainty.

*Trumbull.* *Peake,* in treating of the evidence in actions against sheriffs, says, that in an action for *false return* of mesne process, the plaintiff, in order to show the amount of damages he has sustained, should prove the circumstances of the party arrested, at the time of the arrest, and that he has since absconded or become insolvent ; for if he were originally in bad circumstances, or he may be met with every day, and the plaintiff has *not in fact been injured,* by the negligence of the defendant, the damages will be nominal. In an action for an *escape* on mesne process, the plaintiff, he says, must prove, that the party was at large, or in improper custody, after the return of the writ ; that no bail above was put in ; and that, by these circumstances, *he has been injured ;* for where a sheriff's officer kept a party in his custody some time after the return of the writ, and then took him to prison, yet as the plaintiff was *not in fact delayed or injured,* the action was holden not to be maintainable. *Peake's Ev.* [390.] 420.

LIVINGSTON, J. Since I have been sitting here, my mind has undergone

(*b*) It was in this connexion, I believe, that the remark quoted in the text was made. I do not insert it in this report, simply because I do not find it in my minutes ; and at this distant period, I may be mistaken as to its true locality. R.

*Windham,*
*July, 1844.*

*Palmer*
*v.*
*Gallup.*

This court have now very properly changed the former rule, and held, that the plaintiff could only recover the damages he had sustained. But they say, these damages it is peculiarly the duty of the jury to assess, and in so doing, they are

a great change. I doubt now, whether it has ever been decided in *England*, that the sheriff is liable for the whole debt, in an action for an escape on mesne process. The cases which have been read, seem to go on the ground, that where no damage has been sustained, no liability at all has been incurred. It appears, however, to have been understood, in the case read from 2 *Day*, that for an escape for the insufficiency of the gaol, the county is liable for the whole debt; though perhaps a distinction may be taken between that case and this.

*Williams.* The cases in which the county has been subjected for the whole debt, are where the escape was on execution, and turned on the construction of our statute. In *Massachusetts*, where the statute on this subject is different, the supreme court has decided differently. *Burrell* v. *Lithgow,* 2 *Mass. R.* 526. In the same case, the court say, that if a debtor in prison on mesne process escapes, the sheriff is answerable to the creditor, in an action on the case, who shall recover *according to the damages he has sustained.* This is the *common law* remedy.

LIVINGSTON, J. This is in point, and as respectable as any *English* decision. It is so respectable that I feel unwilling to depart from it; though it appears to me that the *policy* is the other way. The "common law" is spoken of, in the case referred to. If this is the doctrine of the common law, I have no doubt it has grown up from considerations of hardship in particular cases, which do infinite mischief to public justice—the worst considerations in the world to influence a court of law.

*Daggett* commented upon the case of *Burrell* v. *Lithgow,* remarking, that the court cite no authority for their *dictum* about the common law. The case of *Brown* v. *Lord, Kir.* 209. in this state, was an action against the sheriff, for the default of his deputy, in suffering a person arrested on mesne process to escape; and the defendant was subjected for the whole debt. In *Gleason* v. *Chester,* in this county, the record shows, that the verdict was for the whole debt. In *Crompton* v. *Ward,* 1 *Stra.* 429. 436. which was an action for an escape from custody on a writ of *habeas corpus,* the plaintiff had judgment; and as there is nothing said about the damages, it must be understood to be for the whole debt. *Powel* v. *Hord,* 1 *Stra.* 650. before *Raymond,* Ch. J was an action for a false return on mesne process; the jury found the whole debt in damages, with the approbation of the chief justice; and afterwards, on a motion for a new trial, the whole court were of opinion that the verdict was right.

*Williams.* It is clear beyond a doubt, that in an action for an escape on mesne process, the damages recoverable, are, by the common law, *uncertain.* All the cases, even those in which the whole debt was recovered, show this. In the case of *Powel* v. *Hord,* just cited, Lord *Raymond* said, the damages would depend on circumstances. If the defendant in the original action had been a man of estate, and so no danger, he should think the debt would be too much to give. In *Crompton* v. *Ward,* the court say, that the sheriff had not taken proper caution, whereby the plaintiff, who had an interest—a sort

*Windham,*
July, 1844.

Palmer
*v.*
Gallup.

not limited to any precise sum. They may even give more than the plaintiff's original debt. Where that debt has been lost, by the wilful misconduct or negligence of the officer, they may add to it the costs of a second suit. And as the

of property—in the body of the prisoner, had *sustained a damage.* This damage happened by the neglect of the sheriff, and therefore, he must answer it to the plaintiff in this action. 1 *Stra.* 436. No other rule of damages is here given, than the *damage sustained.* From a note of the case of *Lenthal* v. *Gardiner,* in *Bul. N. P.* 69. it appears, that the sum recovered against the sheriff was *less* than the debt; the judgment being for 2000*l.*, and the damages recovered, only 1000*l.* The giving of a less sum than the whole debt, is here spoken of as a thing that happens *in the course of practice.* *Peake* fully confirms the position, that in an action against the sheriff, either for a false return or an escape, on mesne process, the measure of damages is the injury, which the plaintiff has in fact sustained, by the negligence of the defendant. *Peake's Ev.* 390. (3d *Lond.* ed.) The case of *Burrell* v. *Lithgow,* 2 *Mass. R.* 526. already cited, establishes the same position. To the same effect is *Potter* v. *Lansing,* 1 *Johns. R.* 215., in the state of *New-York.* And in *Rawson* v. *Dole,* 2 *Johns. R.* 454. which was an action of *debt* for an escape, the court say, that if an action *on the case* had been brought, it might have been inquired what was lost by the escape, and the jury might have given such damages as they supposed the party had sustained. If the party brings *case,* even where he might have had *debt,* he thereby leaves the question of damages open. There is a plain distinction not only between escapes on *mesne* and *final* process, but also between escapes on mesne process *before* and *after* commitment. For an escape from a mere arrest, before commitment, the officer has never been held liable beyond the damage actually sustained. [The counsel then addressed the jury on the circumstances attending the escape in question, claiming, that the damages, if any, should be merely nominal.]

*Daggett,* in reply, commented on the cases cited by the counsel for the defendant. In *Rawson* v. *Dole,* the sole question was, whether *interest* on the original debt, could be recovered. In *Potter* v. *Lansing,* no point was decided, by a majority of the court, but that the damages recoverable for the escape, might be enhanced, by the false return. There is no distinction between an escape on mesne process before and after commitment, as to the *liability* of the sheriff, though there may be, as to his returning a *rescous,* or as to the effect of it. See 1 *Stra.* 435, 6.

LIVINGSTON, J., in his charge to the jury, after stating the case, said, The first question is, whether there was a rescous, such as would justify the sheriff. This depends upon the construction to be given to the return, and is a mere question of law. I have no difficulty in saying, that the return shews no rescous. It only confesses that the officer was guilty of a negligent escape. I am therefore of opinion, that the plaintiff is entitled to recover.

The next question relates to the amount of damages to be recovered. Great inconvenience would result to the public from holding, that a sheriff, in a case like this, is not liable for the whole debt: its tendency would be to make officers lax in the performance of their duty. Still I am fully satisfied, that in point of law, the jury are not bound to give the whole debt. You

*Windham,*
July, 1844.

Palmer
*v.*
Gallup.

jury may give more than the debt, so they may give less. If it should be found by them, that the failure of the officer to return the writ, was owing to a mere mistake, in consequence of which the party had suffered nothing, they might give, and indeed it would be their duty to give, only nominal damages.

may give the whole debt; or you may give less; it is a matter wholly within your province; the court will not interfere.

His Honor remarked, that the case from *Massachusetts* was entitled to great consideration. He was fully satisfied, that the practice in *England* and in this country, had been according to this direction.

The jury returned a verdict for the plaintiff to recover damages equal to the whole debt.

*Williams* moved to erase the cause from the docket, on the ground that the court had not jurisdiction of it. He read the description of the parties in the writ, and cited *Bingham* v. *Cabot* & al. 3 *Dal.* 382. *Abercombie* v. *Dupuis*, 1 *Cranch* 343. *Wood* v. *Wagnon*, 2 *Cranch* 1.

*Daggett*, contra. It may well be presumed, that there is no disposition in this court to apply the doctrine of these cases to others not strictly analogous. The plaintiff is described as a citizen of the *district* of *New-York*. He is, of course, a citizen of the *state* of *New-York*. The court will judicially take notice of the act of Congress making the district and state co-extensive. Then as to the defendant; he is described as an inhabitant of *Windham* in *Windham* county, sheriff of said county, and a citizen of the *United States.* Every person who is an inhabitant of any state, and a citizen of the *United States*, is a citizen of that state. The description of the defendant is tantamount to saying, that he is a citizen of the state of *Connecticut.* Thus it appears, that the parties are citizens of different states.

*Williams*, in reply. This court will not hold jurisdiction by intendment. It must be expressly averred, that one party is a citizen of one state, and that the other party is a citizen of a different state. Now, to say nothing of the plaintiff, is it here averred, that the defendant is a citizen of *Connecticut?* It certainly is not, in terms. Nor does this fact appear by necessary inference. A man may be " of *Windham*"—*i. e.* a resident or inhabitant of that town— and sheriff of the county of *Windham*, without being a citizen of this state. Citizenship is not co-extensive with inhabitancy. But if otherwise, we claim that *intendment* is not sufficient.

LIVINGSTON, J. I do not question the correctness of the decisions referred to. If I understand them, they amount to this, that if the court cannot see from the record, that the parties are citizens of different states, it will dismiss the cause. After a cause has proceeded as far as this has, it is the duty of the court to make every reasonable intendment in favour of the jurisdiction. Can such intendment be made here? There is a decision which removes all objection as to the plaintiff. Then, is the defendant so described, that the court can see, that he is a citizen of *Connecticut?* The description of him as a citizen of the *United States* and an inhabitant of *Connecticut*, is equivalent to describing him as a citizen of *Connecticut.* He is, moreover, described as exercising an office, which none but a citizen of the state can be presumed to be capable of exercising.—The motion must be denied.

It is added, that the jury were told, if they should find the plaintiff was notified of the failure of his attachment, and that the whole or any part of the property attached, was then in the same situation as when the attachment was levied, and might then have been attached and secured to the plaintiff, by the use of ordinary diligence, the defendant was not liable for the value of such property. The charge proceeds upon the ground, that upon the facts here stated, the property, if lost to the plaintiff, was lost by his own neglect, and not by reason of the neglect of the officer; and it seems difficult to resist the conclusion, unless the principle is to be adopted, that in every case the creditor is obliged to use no further diligence, but may fold his hands, and call upon the sheriff for the payment of his debt. *Clark* v. *Smith,* 10 *Conn. R.* 1. 7. The court there seems to proceed upon the ground that the conduct of the officer and that of the plaintiff may both be taken into consideration; and that such damages may be given as will do justice to the parties, whether more or less than the debt. There was a mere mistake of the officer as to the court to which the writ was returnable; as soon as he knew it, he did all he could to repair it, by service of another process upon the same property; but the creditor refused to permit it, and insisted that he would look to the officer only. In the present case, a writ of attachment is given to an officer against three men, two of whom having visible personal property. He serves the writ but upon one of them; it is returned to court; he permits the plaintiff to go on, and take judgment against all, without informing him of what he had done, except by his return. The plaintiff, not knowing but all is right, takes judgment against all the debtors, and some time after, we know not when, learns that his judgment is worthless, at least as to two of the defendants. And when he calls upon the sheriff, the officer, without making any explanation as to his own conduct in so entirely neglecting his duty, comes coolly into court, and says, that the plaintiff has suffered nothing; the property is there; you can take it now; and your debt is lost, by your own negligence, not by mine. There is no evidence that the plaintiff knew the property remained with the debtor; and there is no evidence that he knew of his debtor's property, when the writ was served. But he ought to have known it, says the defendant, at least to

*Windham,*
July, 1844.

Palmer
*v.*
Gallup.

have inquired.    When the plaintiff found, that this officer had attached nothing of the defendants, and made no service upon them, the fair presumption might have been, that there was nothing to attach.    At all events, the court are of opinion, that the subject of damages, and of the negligence of the parties as affecting the damages, was fairly presented to the jury, and was peculiarly within their province ; and we do not feel called upon to disturb their verdict ; for while the plaintiff is not to fold his hands, when he knows he has a remedy against his debtor, still less is this officer to be indulged in trifling with his duties and the obligations he is under to the creditor, and then claim he may fold his own hands, leaving the creditor in entire ignorance of his neglect, until accident disclose it.    The whole conduct of the officer, as well as of the creditor, formed a fair subject of consideration with the jury.

But there are other circumstances in this case, which, though not alluded to in the argument, we feel called upon to notice.    The suit was brought by the plaintiff upon a receipt given jointly by three persons to the plaintiff.    The officer serves this writ but upon one of them ; and the plaintiff's attorney, ignorant of this fact, takes judgment against them all.    When the plaintiff finds his mistake, what is he to do, or how is it to be rectified ?    Can he treat this as a void judgment against two of the defendants ?    He certainly cannot safely levy his execution upon those on whom there has been no service ; and if he has obtained a legal judgment against one only, a serious question arises, can he now obtain another judgment against the other coöbligors ?

It has been decided in *New-York*, that where the plaintiff had taken judgment against two partners on a note, this was a bar to an action on the same note against two other partners. *Robinson* v. *Smith*, 18 *Johns. R.* 459.   And Chancellor *Kent* cites a case decided by Judge *Washington*, where the same principle is advanced.    *Perry* v. *Martins*, 4 *Johns. Ch. R.* 469.    A contrary opinion is indeed held, by the supreme court of the *United States.    Sheehy* v. *Mandeville*, 4 *Cran.* 255. 265.    That opinion was before the courts of *New-York*, and by them reviewed, without saying what the effect of this judgment upon the receipt would be.    We think the plaintiff's course was so embarrassed, by the negligence of the defendant, in omitting to make any service of the writ upon

two of the defendants, that he was justifiable in the course he took ; and under these circumstances, we cannot say, that his negligence was the cause of the damage. Certainly, we cannot grant a new trial upon this ground.

Another fact, however, is shown, that upon the execution the officer collected about 70 dollars. It is said, and perhaps justly, that the plaintiff can recover that of the deputy-sheriff, notwithstanding this verdict. Unless, therefore, he discharges any claim he may have for that sum, we shall advise a new trial.

In this opinion the other Judges concurred.

New trial to be granted, *nisi*.